**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDDIE HUA,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES, et al.,<br><br>Defendants. | Civil Action No. 20-748 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Cross-Motions for Summary Judgment filed by Plaintiff Eddie Hua ("Plaintiff") and Defendants the fBoard of Trustees of the United Food and Commercial Workers Union Local 1262 and ShopRite Welfare Fund (the "Board of Trustees") and Conduent Payment Integrity Solutions ("Conduent") (collectively, "Defendants"). (ECF Nos. 14, 15.) Defendants opposed Plaintiff's motion. (ECF No. 16.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion is denied and Defendants' Motion is granted.

**I. BACKGROUND**

The Board of Trustees and Conduent are, respectively, the plan administrator and the "subrogation/reimbursement agent" of the United Food and Commercial Workers Union Local 1262 and ShopRite Welfare Fund (the "Fund"), an employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Joint

Statement of Stipulated Facts ("JSSF") ¶¶ 2, 19–20, ECF No. 14-1.) At all times relevant, Plaintiff was a Fund participant. (*Id.* ¶ 2.)

The Fund "offered self-funded medical benefits" and "maintained stop-loss insurance coverage to limit its potential exposure[.]" (*Id.* ¶¶ 7, 9.) "Such coverage provided for potential reimbursement to the Fund if an individual plan participant incurred more than $125,000 ('attachment point') in medical benefits during the [twelve]-month calendar year. . . . In such a case, paid benefits exceeding the attachment point would be reimbursed to the Fund by its stop-loss carrier." (*Id.* ¶ 9.) Through a subrogation and reimbursement clause, the Fund retained rights of subrogation and reimbursement against all plan participants and third parties for medical benefits paid by the Fund. (*Id.* ¶ 16.) The Fund also offered insured benefits—including vision care, life insurance, and legal services—which "were administered under separate and distinct agreements." (*Id.* ¶¶ 11–12.)

In February 2018, Plaintiff sustained injuries in a motor vehicle accident. (*Id.* ¶ 1.) "The Fund paid $39,013.47 in accident-related medical benefits on" Plaintiff's behalf. (*Id.* ¶ 5.) In August 2018, Plaintiff filed a personal injury action against third parties in the Superior Court of New Jersey to recover damages for the injuries caused by the accident.[1] (*Id.* ¶ 21.) Sometime thereafter, the Board of Trustees asserted an equitable lien by agreement against any potential recovery—not to exceed the $39,013.47 in medical benefits paid by the Fund—obtained by Plaintiff in the state court action. (Notice of Removal ¶ 8, ECF No. 1.) In January 2020, Plaintiff filed an action against Defendants in the Superior Court of New Jersey seeking a declaratory judgment barring the asserted lien pursuant to a state insurance regulation. (*Id.* ¶ 9.) Defendants subsequently removed the matter to this Court. (*See generally* Notice of Removal.) On October 6,

---

[1] The state court action was scheduled for trial in December 2020. (JSSF ¶ 22.)

2020, the parties moved for summary judgment seeking a declaratory judgment as to the lien's legal enforceability.

## II. LEGAL STANDARD

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under the governing law[,]" *Anderson*, 477 U.S. at 248—raises a "genuine" dispute if "a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, U.S. at 250). "[D]isputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in the light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if . . . sufficient evidence [is provided] to allow a jury to find [for him] at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

3

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently, . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468–69 (citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015).

## III. DISCUSSION

### A. Parties' Positions

The central issue before the Court is whether the Fund is self-funded or insured for ERISA preemption purposes. (Pl.'s Moving Br. 1, ECF No. 15; Defs.' Moving Br. 1–2, ECF No. 14-4.) A plan is self-funded if "it does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants." *FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990). If self-funded, the applicable state insurance regulation—N.J. Admin. Code § 11:4-42.10,[2] which renders equitable liens unenforceable—would be preempted and, consequently, Defendants' asserted lien would be enforceable against Plaintiff's potential tort recovery. On the other hand, if the Fund is insured, then N.J. Admin. Code § 11:4-42.10 would be saved from preemption and therefore would bar Defendants from asserting a lien against Plaintiff's potential tort recovery.

Despite stipulating that the medical benefits offered by the Fund "were fully self-funded[,]" (JSSF ¶¶ 6–7), Plaintiff argues in his two-page Moving Brief that the Fund is insured for

---

[2] N.J. Admin. Code § 11:4-42.10 provides, in relevant part: "No policy or certificate providing health insurance shall limit or exclude health benefits as the result of the covered person's sustaining a loss attributable to the actions of a third party." N.J. Admin. Code § 11:4-42.10(a).

4

preemption purposes "because of the existence of stop[-]loss insurance coverage with respect to medical benefits... and because of other additional insured medical benefits as part of the overall plan." (Pl.'s Moving Br. 1.) According to Plaintiff, therefore, the Fund "remains subject to" N.J. Admin. Code § 11:4-42.10 "by virtue of ERISA's 'saving[]' clause." (*Id.* at 1–2 (citations omitted).)

In opposition, Defendants assert that N.J. Admin. Code § 11:4-42.10 "is preempted in the case of self-funded plans by ERISA's 'deemer' clause[.]" (Pl.'s Moving Br. 1–2 (citation omitted).) Defendants also argue that neither the stop-loss insurance nor the insured benefits "causes the Fund to lose its self-funded status." (*Id.* at 3.) Consequently, Defendants contend that the asserted lien is legally valid and enforceable. (*Id.* at 23.) The Court agrees.

### B. ERISA Preemption and Self-Funding

#### 1. ERISA Preemption

Plaintiff contends that Defendants are precluded from asserting a lien pursuant to N.J. Admin. Code § 11:4-42.10 because it survives preemption under ERISA's saving clause. (Pl.'s Moving Br. 1.) Defendants do not dispute that N.J. Admin. Code § 11:4-42.10 is generally subject to the saving clause but rather assert that ERISA's deemer clause provides an exception in the case of self-funded plans. (Defs.' Moving Br. 1–2, 12–13.)

ERISA contains three interrelated provisions governing its express preemption of state law: (1) the preemption clause; (2) the saving clause; and (3) the deemer clause. *FMC*, 498 U.S. at 57–58. The first provision preempts state laws that "relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The second provision "saves" such laws from preemption—except as provided in the deemer clause—if they "regulate[] insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A); *see FMC*, 498 U.S. at 58 ("The saving clause returns to the States the power to

5

enforce those state laws that 'regulat[e] insurance,' except as provided in the deemer clause." (alteration in original)). Under the third provision, the deemer clause, "a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company." *N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of N.J., Inc.*, No. 09-2630, 2010 WL 11594901, at *6 (D.N.J. Jan. 12, 2010) (alteration in original) (citation omitted); 29 U.S.C. § 1144(b)(2)(B). "As such, the deemer clause exempts a self-funded ERISA plan from state laws regulating insurance within the saving clause." *CIGNA*, 2010 WL 11594901, at *6 (citing *FMC*, 498 U.S. at 61–64); *see FMC*, 498 U.S. at 61 ("[S]elf-funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not 'saved' because they do not regulate insurance. State laws that directly regulate insurance are 'saved' but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purpose of such state laws.").

Here, Plaintiff's argument that the Fund remains subject to N.J. Admin. Code § 11:4-42.10 pursuant to the saving clause presupposes that the Fund is insured rather than self-funded. Stated differently, the threshold issue in this matter is whether the Fund is self-funded or insured for ERISA preemption purposes. If self-funded, the Fund would be subject to the deemer clause, which Plaintiff fails to address. *See FMC*, 498 U.S. at 64 ("Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it."). For the same reason, Plaintiff's reliance on *Rocha v. Aetna, Inc.*, 167 F. Supp. 3d 700 (D.N.J. 2016) is misplaced. Plaintiff relies on *Rocha* to support his proposition that N.J. Admin. Code § 11:4-42.10 "survives the preemption doctrine." (Pl.'s Moving Br. 1.) But *Rocha* did not deal

6

with the issue of whether the plans were self-funded or insured for preemption purposes; the deemer clause was not addressed. *Rocha*, 167 F. Supp. 3d at 708–11. Thus, the question remains whether the Fund is self-funded and therefore exempt from N.J. Admin. Code § 11:4-42.10 pursuant to the deemer clause.

### 2. The Fund is Self-Funded for ERISA Preemption Purposes

As noted above, the parties stipulated that the subject medical benefits "were fully self-funded." (JSSP ¶¶ 5–6.) According to the parties, "[a]ll self-funded benefits offered by the Fund are paid from a trust, which is funded through a combination of contributions from contributing employers, Fund assets in the form of investment income, and employee contributions to the extent required. None of the [s]ubject [b]enefits were insured." (*Id.* ¶ 6.) Nevertheless, Plaintiff asserts that the Fund is insured for preemption purposes because it (1) maintained stop-loss insurance, and (2) provided other insured benefits. (Pl.'s Moving Br. 1–2.) Both arguments fail.

#### i. Stop-Loss Insurance

The Third Circuit previously addressed the issue of "whether a self-funded employee benefit plan is 'insured' when it purchases stop-loss insurance[]" in *Bill Gray Enterprises, Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 213–14 (3d Cir. 2001). There, the Third Circuit joined other Courts of Appeals in holding that "the purchase of stop-loss insurance does not make a self-funded employee benefit plan an insurance carrier under ERISA's 'saving[] clause.'" (*Id.* at 214.) In reaching its decision, the court explained that "[b]ecause stop-loss insurance is designed to protect self-funded employee benefit plans, rather than individual participants, plans purchasing stop-loss insurance are not deemed 'insured' under ERISA." *Id.* at 215 (citation omitted).

Under *Bill Gray*, therefore, self-funded ERISA plans that purchase stop-loss insurance are generally protected by the deemer clause. *Id.* (citing *Am. Med. Sec., Inc. v. Bartlett*, 111 F.3d 358 (4th Cir. 1997) ("self-funded ERISA plan that purchases stop-loss insurance 'should properly be termed a non-insured plan, protected by the deemer clause.'")). Plaintiff cites no case law or legal authority to the contrary. Moreover, Plaintiff's attempt to distinguish *Bill Gray* is unclear. Without explanation, Plaintiff asserts that the attachment point of the Fund's stop-loss insurance is $125,000 while the attachment point in *Bill Gray* was $40,000. (*See* Pl.'s Moving Br. 2.) But this fact, if anything, strengthens a finding that the Fund is self-insured. As the *Bill Gray* court recognized, "a self-funded ERISA plan may purchase such a large amount of stop-loss insurance that it appears as if the plan is no longer operating as a self-funded employee benefit plan but rather effectively operating as an insurance company." 248 F.3d at 215. While large amounts of stop-loss insurance would be evidenced by low-attachment points, the court did not consider the $40,000 attachment point in that case to be evidence of excessive stop-loss coverage. *Id.* The Fund's higher attachment point of $125,000, therefore, strengthens a finding that the Fund remains self-funded. *See G.R. Herberger's, Inc. v. Erickson*, 17 F. Supp. 2d 932, 935 (D. Minn. 1998) ("purchase of reinsurance, protecting [the plan] against a catastrophic loss exceeding $100,000, does not negate its status as an ERISA self-insured plan"). On these facts, the Court finds that the presence of stop-loss insurance coverage does not alter the Fund's self-funded status.

### ii. Insured Benefits

According to Plaintiff, the presence of insured benefits—specifically, vision care, life insurance, and legal services—"taints the preemption." (Pl.'s Moving Br. 2.) The Court disagrees. A case cited by Defendants, *White Consolidated Industries, Inc. v. Lin*, 859 A.2d 729 (N.J. Super. Ct. App. Div. 2004), is instructive on this point.

8

In *White Consolidated Industries*, the plan offered New Jersey-based participants medical benefits pursuant to a program that was "entirely self-funded." 859 A.2d at 731. The plan also offered insured benefits to out-of-state participants, including medical benefits and life insurance. *Id.* Despite the presence of insured benefits, the court found that the plan remained self-funded for ERISA purposes. *Id.* at 733. The court held that:

> where, as here, the medical benefits in question are provided under an employer's fully self-funded employee health care plan, and other benefits purchased by an insurance policy are completely separate from those health benefits, then the plan is not deemed to be insurance for purposes of ERISA's insurance saving[] clause[.] Rather, such plan is properly termed a non-insured plan, protected by ERISA's deemer clause[.]

*Id.* at 733–34 (citations omitted).

Similarly, here, it is undisputed that the Fund's insured benefits were separate and distinct from the self-funded medical benefits provided by the Fund. (JSSF ¶¶ 6–7, 11–12.) Consequently, the Fund "remains an uninsured, self-funded welfare plan for ERISA preemption purposes." *White Consol. Indus.*, 859 A.2d at 733 (citing in part *United Foods & Com. Workers & Employs. Ariz. Health & Welfare Tr. v. Pacyga*, 801 F.2d 1157, 1162 (9th Cir. 1986)). As with the stop-loss insurance issue, Plaintiff cites no case law or legal authority to the contrary. Moreover, Plaintiff's attempt to distinguish *White Consolidated Industries* is unavailing. Plaintiff asserts that *White Consolidated Industries* "is distinguished because the insured benefits there were paid only to out-of-state employees under a special plan. That is not the case here." (Pl.'s Moving Br. 2.) It is true that *White Consolidated Industries* involved a plan that offered insured benefits to out-of-state employees. But nothing in the court's opinion suggests that its holding is limited to those circumstances. In fact, the court's approval of *Pacyga*—in reaching its decision that the plan remained self-funded—suggests the contrary. As the court observed, the Ninth Circuit in *Pacyga*

9

found that a plan remained self-funded for ERISA purposes despite the presence of insured benefits because those benefits "were 'completely separate' from the self-funded health benefits provided by the plan[.]" *White Consol. Indus.*, 859 A.2d at 733 (citing *Pacyga*, 801 F.2d at 1162). The Ninth Circuit did not, however, distinguish between in-state and out-of-state plan participants in reaching its decision; indeed, the plan seemingly offered the insured benefits to its in-state plan participants. *See Pacyga*, 801 F.2d at 1159–62. Based on the foregoing, the Court finds that the presence of insured benefits does not alter the Fund's self-funded status.

In sum, neither the presence of stop-loss insurance coverage nor the insured benefits alter the Fund's self-funded status. Because it is self-funded, the Plan is protected by the deemer clause and, consequently, Defendants' asserted lien is enforceable against Plaintiff's tort recovery.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**